# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ANDREW D. LATTA,<br>　　　　Plaintiff,<br><br>　　　　v<br><br>U.S. STEEL - EDGAR THOMPSON PLANT,<br>　　　　Defendant. | )<br>)<br>)<br>)  2:11-cv-1622<br>)<br>)<br>)<br>)<br>)<br>) |

## MEMORANDUM OPINION AND ORDER OF COURT

Now pending before the Court is UNITED STATES STEEL CORPORATION'S MOTION FOR SUMMARY JUDGMENT (ECF No. 20), with brief in support. Plaintiff Andrew D. Latta ("Latta") filed a response and brief in opposition to the motion and U.S. Steel filed a reply brief. The parties have thoroughly developed their respective positions regarding the Concise Statement of Material Facts ("CSMF") and submitted numerous exhibits. The motion is ripe for disposition.

Factual and Procedural Background

This is an employment discrimination case. The facts must be viewed in the light most favorable to Plaintiff. Latta began working for US Steel on September 11, 2000 in the Basic Oxygen Process ("BOP") department of the steelmaking process at the Edgar Thomson Works near Pittsburgh, Pennsylvania. Latta has never been discharged or disciplined by US Steel and remains employed there. Latta is a member of the United Steelworkers Union and his employment is governed by a Basic Labor Agreement ("BLA"). Until March 2013, Latta was employed as a Labor Grade 2 Utility Person.

Latta works in the immediate vicinity of the steel ladle. The entire BOP area is subject to high temperatures, which can exceed 90 degrees in the summer months, although the proximity of the workers to the 3000 degree molten steel does vary somewhat from position to position. Workers wear a variety of protective equipment to protect themselves from the extreme heat of the molten steel.

Latta has taken blood pressure medication for fifteen years, which does not affect his ability to function. Latta has taken medication since November 2001 to treat depression. Since late 2001, Latta has experienced excessive excessive perspiration, which he attributes to the effects of his medication. Latta has not been prescribed any medication for this condition. It is treated by taking fluids and resting in a cool place.

On June 21, 2010 Latta signed a bid for a promotion to Operating Technician I, a Labor Grade 3 position in the BOP department. Under the BLA, bids are awarded by seniority and the successful bidder is expected to accept the bid within two weeks. Latta was the most senior bidder. The date on which Latta was expected to begin performing the Operating Technician I duties was July 28, 2010, although he testified that he was unaware of this date. Through the entire month of August, Latta failed to accept the bid. On September 2, 2010 Kurt Wilson, the manager of the BOP department, met with Latta and informed him that if he did not accept the job that day, it would be awarded to the next-senior bidder.

In response to this ultimatum, Latta presented Wilson with a letter from his personal physician, Dr. Kamlesh Gosai, dated August 25, 2010 which stated, in relevant part: "Due to his ongoing medical conditions he should not be exposed to excessive temperatures." Latta had not previously expressed any concerns about high temperatures. Upon receipt of this letter, Wilson was concerned for Latta's health and referred Latta to a US Steel doctor. The US Steel doctor

2

referred Latta back to Dr. Gosai to determine whether Latta was able to work in the BOP area. Latta was not able to be examined by Dr. Gosai until after the Labor Day weekend, at which point Dr. Gosai found him fit to return to work. Latta returned to his gatekeeper assignment without any medical restriction on September 10, 2010. Wilson again imposed a deadline on Latta to decide whether he would accept the bid. Latta did not make a final decision, although he contends that he "was pursuing acceptance of this bid" through his bid foreman, Chuck Zigler. On September 14, 2010 the Operating Technician I job was awarded to the next bidder.

On December 27, 2010, Latta tore a tendon in his left ankle, which caused swelling and triggered depression. Latta eventually had surgery on the ankle in March 2012.

Until mid-2011, Latta was assigned to work as a gatekeeper. At that time, Latta was re-assigned to a job as a burner in response to his harassment of two newly hired co-workers. On July 30, 2011 Latta collapsed at work from a heat-related illness and was taken by ambulance and treated for dehydration at the medical facility of the US Steel Clairton Works. This was the only episode of heat-related illness for which Latta was treated during his employment.[1] Latta called off work the next day, July 31st. On August 2, 2011 Latta went to an appointment with Dr. Gosai. On August 3rd, he appeared at the US Steel medical office for a return to work physical but reported that he still did not feel well and was sent back to Dr. Gosai.

On August 11th, Latta returned to the US Steel medical office for another return to work physical. Latta presented a letter from Regina Hudak, a Physician Assistant in Dr. Gosai's office, which stated that Latta was able to return to work on August 14th. However, the letter further recommended, based on discussions with Latta, that due to excessive perspiration Latta be transferred from the burner job back to the gatekeeper job. Dr. Vaughan, the US Steel doctor, found that Latta was no longer suffering from dehydration and that his general physical condition

---
[1] Latta experienced heat-related episodes outside of work in 2009 and the summer of 2012.

3

and medical tests were normal. Unable to determine the cause of Latta's continuing complaints, Dr. Vaughan recommended further evaluation by Dr. Gosai and refused to clear him for work on that date. Medical tests continued through the end of August. Latta was not prescribed any medication to control his excessive perspiration and no other medical problems were found.

There was apparent confusion between the parties as to Latta's status during the 49-day time period. Latta called every week but was not scheduled to work. Latta believed that he was being prevented from working by US Steel and applied for unemployment and disability benefits. Attached to Latta's application for disability benefits was an August 19th Physician's Statement of Dr. Gosai, in which he stated, in relevant part: (1) that Latta had been unable to perform his job from August 2nd through "unknown"; (2) that he was "not fit for gainful employment until all testing and evaluations are done"; (3) that the most recent appointment had been on August 15th; and (4) that the next appointment was scheduled for August 29th. The record does not reflect the results of the August 29th appointment or any followup communication between Latta and US Steel thereafter. US Steel concluded that Latta had abandoned his position. In early September, US Steel threatened to issue a 5-day letter to Latta for failing to report to work. After discussions between the union and company, on September 19th Latta returned to work without medical restriction in the burner job. Latta had been off work for 49 days.

Latta had suffered from depression and needed intermittent leave since at least 2007, particularly on days associated with the death of his son. Sometime in 2009 or in February 2010[2] Ashley Wissinger, an attorney in the US Steel Labor Relations department, allegedly told Latta that she believed he was using FMLA "as an umbrella" and that she had "a problem with someone claiming they have a disability when there's nothing wrong with them." Nevertheless,

---

[2] Latta's deposition testimony conflicted as to the date. *Compare* Deposition at 126-127 *with* 286.

Latta's requests for time off pursuant to the Family Medical Leave Act ("FMLA") were routinely granted.

On December 8, 2010 Latta filed a charge of discrimination with the EEOC and PHRC, alleging age and disability discrimination for denial of the Operating Technician I job in September 2010. On January 9, 2012 Latta filed a second charge of discrimination with the EEOC and PHRC, alleging disability discrimination and retaliation based on the events of July-September 2011. Neither charge of discrimination alleges, explicitly or implicitly, a hostile work environment. Nor do the discrimination charges claim a disability based on depression.

Latta filed two separate civil actions, which have been consolidated. In his first Complaint, he asserts claims based on the events of September 2010 for: (1) violation of the Americans With Disabilities Act ("ADA"); (2) retaliation under the ADA and Pennsylvania Human Relations Act ("PHRA"); (3) violation of the Age Discrimination in Employment Act ("ADEA"); and (4) a hostile work environment under the ADA and ADEA. In his second Complaint, Latta asserts claims based on the events of July-September 2011 for: (1) violation of the ADA; (2) retaliation under the ADA and Family and Medical Leave Act ("FMLA"); (3) violation of the FMLA; and (4) hostile work environment under the ADA and FMLA.

Standard of Review

Summary judgment must be granted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). The movant must identify those portions of the record which demonstrate the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). To withstand summary judgment, the non-movant must show a genuine dispute of

material fact by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." FED. R. CIV. P. 56(c)(1)(A); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986). A dispute is "genuine" only if "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

Legal Analysis

Latta has abandoned his age discrimination claims. US Steel seeks summary judgment on all remaining claims. In particular, US Steel contends that there is no evidence of interference with Latta's FMLA rights; nor is there evidence of retaliation for his use of FMLA leave. Latta appears to concede that the FMLA "interference" claim lacks merit and explains that his response to summary judgment "will focus on the retaliatory aspects of his FMLA use." US Steel also contends that Latta cannot establish an underlying violation or retaliation under the ADA. In response, Latta explains that his "ADA case again largely focuses on [the] retaliatory aspects of Plaintiff's requests." Finally, US Steel contends that Latta cannot pursue a hostile work environment claim because he failed to exhaust his administrative prerequisites. Plaintiff has not addressed this contention. The Court will address these contentions seriatim.

    A. Discrimination Claims Under the FMLA and ADA

The FMLA interference claim is easily resolved. To establish a claim for "interference" with FMLA rights, Latta must show that US Steel illegitimately prevented him from obtaining

6

FMLA benefits. *See Callison v. City of Philadelphia*, 430 F.3d 117, 119 (3d Cir. 2005). The record in this case is clear that Latta received all of the FMLA leave which he requested. The alleged comment by Ashley Wissinger did not prevent Latta from receiving his FMLA leave.

The familiar *McDonnell-Douglas* burden-shifting analysis governs claims of employment discrimination under the ADA. To establish a prima facie case of discrimination, Plaintiff must show that (1) he is a member of a protected category; (2) he applied for and was qualified for a job for which the employer was seeking applicants; (3) despite his qualifications, he was rejected; and (4) after his rejection, the position remained open and the employer continued to seek applicants. In an ADA claim, Plaintiff must establish the first element by showing that he has a disability. The ADA defines a "disability" as: "(A) a physical or mental impairment that substantially limits one or more of the major life activities of [an] individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(2). An individual is "regarded as" having a substantially limiting disability when his employer believes he has an impairment that limits him in major life activities. If Latta succeeds in establishing a prima facie case, the burden shifts to US Steel to articulate some legitimate, nondiscriminatory reason for its decision. The burden then shifts back to Latta to prove that the reason(s) offered by US Steel is/are merely a pretext for discrimination. The ultimate burden of persuading the trier of fact that US Steel intentionally discriminated against him due to his disability remains at all times with Latta. *See generally Holodak v. Rullo*, 210 Fed. Appx. 147, 150 (3d Cir. 2006) (and cases cited therein).

Latta contends that he is disabled primarily due to his intermittent depression, although he also references his ankle injury and the heat stroke incident in July 2011.[3] The Court agrees

---

[3] Notably, Latta cited his heat-related condition, but not depression, as a disability in the EEOC charges. Latta no longer cites his "excessive sweating" condition as a disability.

7

with US Steel that none of Latta's conditions meets the definition of a "disability." The depression is intermittent and infrequent and is accommodated by FMLA leave. *See* Latta Deposition at 202 (depression treated and under control by 2010). Latta apparently worked despite his ankle injury, and his ankle is not referenced in the EEOC charges. The heat-related incident was short-lived and was treated without medication. Moreover, assuming arguendo that Latta could make out a prima facie case, US Steel has articulated legitimate, non-discriminatory reasons for its actions, namely: (1) Latta was offered the Operating Technician I job, but failed to accept it despite several extensions of time; and (2) Latta had been taken away from work in an ambulance on July 30, 2011 and the medical clearances to return to work issued by Dr. Gosai (and staff) were equivocal. It is undisputed that Latta was off work through August while further medical tests were performed. Even assuming that Latta could have returned to work prior to September 19th, he has wholly failed to produce any evidence of record to show that the reasons of US Steel for keeping him off work were a pretext for discrimination based on his depression or other disability.

In sum, US Steel is entitled to summary judgment on the claims of discrimination under the FMLA and ADA.

### B. Retaliation Claims

The *McDonnell-Douglas* burden-shifting analysis also governs retaliation claims under the FMLA and ADA. To establish a prima facie case, Latta must point to evidence in the record sufficient to create a genuine factual dispute: (a) that he engaged in protected conduct under the ADA and/or FMLA; (b) that US Steel engaged in an adverse employment action(s); and (c) that there is a causal link between the protected conduct and the adverse action(s). *Lichtenstein v.*

*University of Pittsburgh Medical Center,* 691 F.3d 294, 302 (3d Cir. 2012); *Williams v. Phila. Hous. Auth. Police Dep't*, 380 F.3d 751, 757 (3d Cir. 2004). US Steel argues that Latta cannot meet any of these elements.

The record is clear that Latta did request FMLA leave for many years, which the Court will construe as a protected activity under the FMLA. Latta does not articulate any distinct protected activity under the ADA. Instead, he simply argues that his primary disability is depression and that his requested accommodation is intermittent leave. Thus, his ADA retaliation theory is indistinguishable from his FMLA retaliation theory.

Latta points to several alleged adverse actions: (1) Wissinger's comment in 2009 or February 2010 that he uses FMLA leave "as an umbrella"; (2) an incident in early 2009 in which he was counseled for absenteeism when he reported off for FMLA leave; (3) the denial of the Operating Technician I job in September 2010; and (4) the 49-day layoff in 2011.

Latta must prove traditional "but-for" causation. *University of Texas Southwestern Med. Ctr. v. Nassar*, 133 S.Ct. 2517, 2533 (2013). A plaintiff can satisfy the requisite causal link in at least two ways, by demonstrating (1) that the temporal proximity between the protected activity and the adverse action that is "so close as to be unduly suggestive" of causation, *Williams v. Phila. Housing Auth.*, 380 F.3d at 760; or, in the absence of temporal proximity, (2) "timing plus other evidence," *id.*, for example, that the employer "engaged in a pattern of antagonism in the intervening period." *Flaig v. Aladdin Food Management Services, LLC*, 2012 WL 5288716 at *5 (W.D. Pa. 2012). A time gap of two months is not unduly suggestive. *Id*. Other than a bald conclusory assertion, Latta makes no effort to demonstrate a sufficient causal link. Latta had been taking (and receiving) FMLA leave since at least 2007 without any alleged reprisal by US Steel. The alleged adverse actions cited by Latta are not temporally related to his protected

9

activity and occurred sporadically over several years. Moreover, the record reflects intervening events which entirely negate any inference of causation – namely, Latta's failure to accept the Operating Technician I job in September 2010 and his heat-related collapse and removal from work in an ambulance in July 2011. *See Thomas v. Town of Hammonton*, 351 F.3d 108, 114 (3d Cir. 2003).[4] In sum, no reasonable jury could conclude, based on this record, that US Steel retaliated against Latta for exercising his rights under the FMLA or ADA.

C. Hostile Work Environment Claims

US Steel contends that this Court lacks jurisdiction to consider the hostile work environment claims because Latta did not exhaust his administrative remedies by filing an EEOC charge on this theory. Latta did not respond to this argument.

A plaintiff must exhaust his administrative remedies prior to filing an employment discrimination lawsuit in federal court. This statutory requirement reflects the policy preference of Congress that employment discrimination disputes be resolved through administrative conciliation rather than by adversarial federal court litigation. *Ostapowicz v. Johnson Bronze Co.*, 541 F.2d 394, 398 (3d Cir. 1976). The test in the Third Circuit for exhaustion of administrative remedies is "whether the acts alleged in the subsequent [ ] suit are fairly within the scope of the prior E.E.O.C. complaint, or the investigation arising therefrom." *Antol v. Perry*, 82 F.3d 1291, 1295 (3d Cir. 1996). Courts should liberally construe the charge to allow a plaintiff to sue for violations "which can reasonably be expected to grow out of the charge of discrimination." *Ostapowicz*, 541 F.2d at 399.

Even construed liberally, the EEOC charges filed by Latta do not encompass a hostile work environment theory. The December 2010 charge was narrowly focused on the denial of the

---
[4] Latta has failed to prove causation even under the less-rigorous "motivating factor" standard.

Operating Technician I job. The January 2012 charge alleged only a 49-day layoff in 2011 in violation of the ADA and FMLA and retaliation under the ADA and FMLA. In *Ocasio v. City of Bethlehem*, 2009 WL 37518 at *3-4 (E.D. Pa. 2009), the Court dismissed a similar hostile work environment claim for failure exhaust administrative remedies. *Accord Cubbage v. Bloomberg, L.P.*, 2010 WL 3488619 (E.D. Pa. 2010); *Eaddy v. PA Dept. of Public Welfare Berks County Assistance Office*, 2005 WL 1324881 (E.D. Pa. 2005). The same result is warranted here.[5]

Conclusion

In accordance with the foregoing, upon a thorough review of the evidentiary record, briefs and arguments of the parties, the Court concludes that UNITED STATES STEEL CORPORATION'S MOTION FOR SUMMARY JUDGMENT (ECF No. 20) will be **GRANTED** in its entirety. Judgment will be entered in favor of US Steel and against Latta and the clerk shall docket this case closed.

An appropriate Order follows.

McVerry, J.

---

[5] Even if the Court were to reach the merits of this claim, Latta has fallen far short of demonstrating severe and pervasive discriminatory conduct.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

ANDREW D. LATTA,  )
        Plaintiff,  )
)
v  ) 2:11-cv-1622
)
U.S. STEEL - EDGAR THOMPSON PLANT,  )
        Defendant.  )
)
)
)
)

### ORDER OF COURT

AND NOW, this 4th day of December, 2013, in accordance with the foregoing Memorandum Opinion, it is hereby ORDERED, ADJUDGED and DECREED that UNITED STATES STEEL CORPORATION'S MOTION FOR SUMMARY JUDGMENT (ECF No. 20) is **GRANTED**. The clerk shall docket this case closed.

                                      BY THE COURT:

                                      s/Terrence F. McVerry
                                      United States District Judge

cc:    **Sean Alan Casey, Esquire**
        Email: sean@caseylegal.com

        **Anthony F. Jeselnik, Esquire**
        Email: afjeselnik@uss.com